UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-61664-CIV-MARTINEZ-BROWN

TELTECH SYSTEMS, INC., WONDERLAND
RENTALS, INC., and MEIR COHEN,

    Plaintiffs,

vs.

BILL MCCOLLUM, in his official capacity as
Attorney General of the State of Florida, and
MICHAEL J. SATZ, in his official capacity as
State Attorney,

    Defendants.
_____/

## ORDER GRANTING FINAL SUMMARY JUDGMENT

Plaintiffs brought this action in order to challenge the constitutionality of Florida's "Caller ID Anti-Spoofing Act" (the "Act"), Fla. Stat. § 817.487. Plaintiffs are business entities that provide their customers communication services that include Caller ID spoofing capability and individuals and organizations who use Caller ID spoofing services on telephone calls that they make. Defendants are Florida officials responsible for enforcing the Act.[1] This cause came before the Court upon Plaintiffs' motion for summary judgment **(D.E. No. 37)** and upon Defendant's motion for summary judgment **(D.E. No. 40)**.

---

[1] The State of Florida has been dismissed as a Defendant in this action on Eleventh Amendment grounds.

## I. Factual Background

The facts in this case are not in dispute. Florida's "Caller ID Anti-Spoofing Act" went into effect on October 1, 2008. The Act provides:

> (1) As used in this section:
> (a) "Call" means any type of telephone call made using a public switched telephone network, wireless cellular telephone service, or voice-over-Internet protocol (VoIP) service that has the capability of accessing users on the public switched telephone network or a successor network.
> (b) "Caller" means a person who places a call, whether by telephone, over a telephone line, or on a computer.
> (c) "Enter" means to input data by whatever means into a computer or telephone system.
> (d) "False information" means data that misrepresents the identity of the caller to the recipient of a call or to the network itself; however, when a person making an authorized call on behalf of another person inserts the name, telephone number, or name and telephone number of the person on whose behalf the call is being made, such information shall not be deemed false information.
> (e) "Telephone caller identification system" means a listing of a caller's name, telephone number, or name and telephone number that is shown to a recipient of a call when it is received.
> (2) A person may not enter or cause to be entered false information into a telephone caller identification system with the intent to deceive, defraud, or mislead the recipient of a call.
> (3) A person may not place a call knowing that false information was entered into the telephone caller identification system with the intent to deceive, defraud, or mislead the recipient of the call.
> (4) This section shall not apply to:
> (a) The blocking of caller identification information.
> (b) Any law enforcement agency of the federal, state, county, or municipal government.
> (c) Any intelligence or security agency of the Federal Government.
> (d) A telecommunications, broadband, or voice-over-Internet service provider that is acting solely as an intermediary for the transmission of telephone service between the caller and the recipient.
> (5)(a) Any person who violates subsection (2) or subsection (3) commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
> (b) Any violation of subsection (2) or subsection (3) constitutes an unlawful trade practice under part II of chapter 501 and, in addition to any remedies or penalties set forth in this section, is subject to any remedies or penalties available for a

> violation of that part.
> (6)(a) The felony or misdemeanor degree of any criminal offense shall be reclassified by the court to the next higher degree as provided in this subsection if the offender violated subsection (2) or subsection (3) during the commission of the criminal offense or if a violation by the offender of subsection (2) or subsection (3) facilitated or furthered the criminal offense. Fla. Stat. § 817.487.

Plaintiffs Wonderland Rentals, Inc ("Wonderland") and Customer Service Review, Inc. ("CSR") use Caller ID spoofing to place "mystery" calls to their clients' customer service representatives, while spoofing the telephone numbers of their client's actual customers, in order to evaluate the customer service provided by their clients. Because of the increased use of mobile phones and call forwarding, Plaintiffs Wonderland and CSR can never be certain where the parties they or their users are calling are located.

In many cases, because of increased use of mobile phone and call forwarding, it is impossible for Plaintiffs to be certain that a party they are calling is not located in Florida (Pl's SMF ¶¶ 16, 19). No hardware or software used in providing telecom services can block calls to or from specific states or geographic areas (Pl's SMF ¶ 20). Blocking calls to telephones with Florida area codes would not ensure that no calls to or from Florida used Caller ID spoofing (Pl's SMF ¶ 21).

The Caller ID displayed is derived from either the Automatic Number Identification ("ANI") string or the Calling Party Number ("CPN") string on a Signaling System 7 ("SS7") used by the public switched telephone network ("PSTN"). Both ANI and CPN were originally developed for the telephone company to use in identifying the billing telephone number of the calling party, not for the called party to use to identify callers.

Plaintiffs have moved for summary judgment on the grounds that the Act violates the

First and Fourteenth Amendments of the Unites States Constitution, that it is preempted by federal law, and that it violates the Commerce Clause. Defendants have moved for summary judgment on the ground that the Act is constitutional in all respects.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court stated that

> In our view, the plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). The Supreme Court has further stated that "Rule 56(c) therefore requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex v. Catrett,* 477 U.S. at 324. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

## III. Analysis

A.  **First Amendment Claim**

1.  Type of Speech

Plaintiffs assert that because a Caller ID identifies a caller, call spoofing activities are speech, subject to the same protections as other forms of speech. In support of this proposition, Plaintiffs cite to case law holding that anonymous speech may be protected. *See McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995).

In *McIntyre*, the Supreme Court stated that "the identity of the speaker is no different from other components of [a] document's content that the author is free to include or exclude." *Id.* at 348. *McIntyre* dealt with a state statute that prohibited the distribution of anonymous campaign literature. *Id.* Unlike the Act in this case, the statute in *McIntyre* burdened core political speech, and "[n]o form of speech is entitled to greater constitutional protection" than political speech. *Id.* at 347.

Despite Plaintiffs' contentions, *McIntyre* does not stand for the proposition that any act of self-identification is speech entitled to protection under the First Amendment. In *McIntyre*, the Supreme Court discussed the right to distribute an anonymous or even pseudonymous document, not the right to identify oneself however one wished in any context. *McIntyre*, 514 U.S. at 341-43; *see also Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 199-200 (1999) (holding that some election process identification requirements are constitutional under *McIntyre*); *In the Matter of Rules and Policies Regarding Calling Number Identification Service--Caller ID*, 10 F.C.C.R. 11700 at 11733 (F.C.C. May 05, 1995) (FCC memorandum opinion and order regarding federal Caller ID regulations, stating that *McIntyre* "did not create a

generalized right to anonymity"). Indeed, in *McIntyre* the Supreme Court quoted a lower court that stated, "People are intelligent enough to evaluate the source of an anonymous writing. They can see it is anonymous. They know it is anonymous. They can evaluate its anonymity along with its message, as long as they are permitted, as they must be, to read that message." *Id.* at 348 n. 11 (1995) (quoting *New York v. Duryea*, 76 Misc.2d 948, 966-67 (N.Y. Sup. 1974)). Thus, the Supreme Court's reasoning in *McIntyre* applies only to messages attributed to anonymous speakers, not to the act of identifying oneself.

In this case, Plaintiffs appear to assert that the identification (or, rather, misidentification) of a caller is itself the communication that they are trying to protect. Not every action with a "communicative element" is "sufficient to bring into play the First Amendment."[2] *United States v. O'Brien*, 391 U.S. 367, 376 (1968).[3] Indeed, even certain words may be treated as "nonspeech" and thus as unprotected elements of communication. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) (stating that "fighting words" are not, in and of themselves, protected by the First Amendment). It is indisputable that in certain contexts falsely identifying oneself is a crime. *See, e.g.*, 18 U.S.C. § 1028A(a)(1) (making it unlawful to use the identification of another

---

[2] Historically, entire categories of speech have been denied First Amendment protection. Some, such as obscenity, are denied any First Amendment protection to this day, while others, such as commercial speech, enjoy less protection than other forms of speech. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992) (discussing the historical and present scope and limits of the First Amendment).

[3] *See also Texas v. Johnson*, 491 U.S. 397, 404 (1989) (determining whether a sufficient "communicative element" was present by asking "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it") (internal quotation and citation omitted). The Court notes that if it were to analyze misidentification through Caller ID as conduct, it would not meet the *Texas v. Johnson* test, because it is highly unlikely that call recipients would understand any particularized message conveyed through an inaccurate Caller ID.

person to make a false statement in an application for a passport or to use the identification of another person to misrepresent oneself as a United States citizen). This Court is not aware of any binding authority that holds that self-identification is in and of itself automatically entitled to First Amendment protection.

Although they do not explicitly say so, Plaintiffs are also trying to protect the right to conduct telephone conversations pseudonymously.[4] In that sense, this case is analogous to cases involving email that either falsely identifies the sender or falsifies the Internet Protocol ("IP address") that can be used to identify the sender. A telephone call where the caller is misidentified on caller ID is similar to an email where the sender is misidentified. Despite the limited scope of the *McIntyre* ruling, at least two courts have applied *McIntyre* to find that statutes that prohibit falsely identifying the source of an email are unconstitutional violations of the First Amendment's right to anonymous speech. *See, e.g., Jaynes v. Virginia*, 666 S.E.2d 303 (Va. 2008); *ACLU of Georgia v. Miller*, 977 F. Supp. 1228 (N.D. Ga. 1997). Neither of these cases is binding upon this Court, however, and the federal case used anonymity only as a springboard to a strict scrutiny analysis.[5] *See ACLU of Georgia*, 977 F. Supp. at 1232. This

---

[4] The Court notes that the right to conduct a telephone call anonymously is not at issue here, because the Act does not outlaw it. In fact, the Act explicitly states that its criminal provisions do not apply to blocking Caller ID information. Fla. Stat. § 817.487(4)(a). In other words, it does not prohibit anonymous speech via the telephone. It does, however, prohibit calls where the caller is identified as someone he or she is not. The Court notes that Act does not distinguish between call spoofing that identifies the caller as an actual person or entity, which some of the Plaintiffs use, and call spoofing that identifies the caller as a fictitious entity or pseudonym.

[5] For the reasons discussed below, *infra*, this Court disagrees with the finding in *ACLU of Georgia v. Miller*, which was arrived at without analysis, that a "prohibition of internet transmissions which 'falsely identify' the sender constitutes a presumptively invalid content-based restriction." *Id.* at 1232.

Court declines to find the statute unconstitutional on the basis of its ban on pseudonymous Caller ID spoofing alone.

2.  Constitutional Scrutiny

Plaintiffs assert that the Act is unconstitutional because it is content-based and cannot meet the strict scrutiny required for content-based regulations.[6] "The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." *R.A.V.*, 505 U.S. at 382 (internal citations omitted). "Content-based regulations are presumptively invalid." *Id.* (citing *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991)). Even statutes that proscribe otherwise unprotected forms of speech, such as obscene materials, may not distinguish between particular viewpoints. *See id.* (noting that an ordinance could ban obscene materials, but could not ban only those critical of local government); *see also New York v. Ferber*, 458 U.S. 747, 763 (1982) (upholding ban on child pornography that did not censor a particular literary theme of child pornography).

The "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622,

---

[6] To the extent that Plaintiffs argue that strict scrutiny is applicable because the Act is tailored to the Caller ID medium, their argument is unavailing. "It would be error to conclude, however, that the First Amendment mandates strict scrutiny for any speech regulation that applies to one medium (or a subset thereof) but not others." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 660 (1994)

643 (1994) (citing *Burson v. Freeman*, 504 U.S. 191, 197 (1992)). "By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Id.* (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) and *Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)). On its face, the Act does not refer to the ideas or views expressed in the telephone calls with pseudonymous Caller IDs that it prohibits.

Plaintiffs have not explicitly identified what viewpoint the Act has censored. In other words, they have not articulated why, despite its facial neutrality, this Court should view the Act as content-based rather than content-neutral. Plaintiffs' brief implies that the reason Plaintiffs think the Act is content-based is because it prohibits only "false" information entered into a Caller ID system. "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* at 339-40. "But there is no constitutional value in false statements of fact." *Id.* at 340. In other words, the fact that a statute distinguishes between true statements of fact and false statements of fact does not make it content-based.[7] To rule otherwise would be to render all

---

[7] This is not to say that false statements of fact are utterly unprotected under the First Amendment. Rendering speakers liable for any false statement of fact would have a chilling effect on otherwise protected speech, and "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters." *Gertz*, 418 U.S. at 341; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964) ("Allowance of the defense of truth, with the burden of proving it on the defendant, does not mean that only false speech will be deterred."). The First Amendment protection afforded to errors of fact depends in part upon whether the speech concerns private matters or public ones, and that limited protection does not elevate deliberate factual falsehood to the level of a political, literary, religious, or scientific "viewpoint." *See Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749 (1985) (plurality opinion)

defamation statutes presumptively invalid as content-based regulations. *See id.* at 341 (noting that "absolute protection for [factual falsehoods would] require[] a total sacrifice of the competing value served by the law of defamation"). Thus, the Court concludes that the Act is content-neutral.

Even content-neutral ordinances that limit speech are subject to First Amendment scrutiny, however. "[R]egulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny . . . because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "[A] content-neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Id.* at 662 (quoting *O'Brien*, 391 U.S. at 377). "To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests." *Id.* "Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (citing *Ward*, 491 U.S. at 799) (internal quotations omitted).

The government interest in this case is in preventing pernicious uses of Caller ID spoofing such as bomb threats, phone phishing,[8] wire transfer fraud, and prank calls. *See*

---

[8] "Phone phishing" is the practice of acquiring personal information over the telephone by posing as a trusted business or organization.

Committee on Homeland Security and Public Safety Staff Report on HB-225 (Fla. 2008). At the least, prevention of the first three, bomb threats, phone phishing, and wire transfer fraud, represent an important or substantial government interest. By making Caller ID spoofing unlawful, and thus making it more difficult or impossible for those engaging in bomb threats, phone phishing, and wire transfer fraud to conceal their identities, the government has promoted its interest more effectively than it could have absent the regulation. This fulfills the requirement of intermediate scrutiny.[9] *See Turner Broadcasting System*, 212 U.S. at 662.

3. <u>Overbreadth</u>

Plaintiffs also assert that the Act is unconstitutional under the First Amendment because it is overly broad and prohibits too many forms of protected speech. "It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at

---

[9] Under intermediate scrutiny, it is not necessary for the Court to find that the Act is the least restrictive means for achieving the government's purpose. *See Turner Broadcasting System*, 212 U.S. at 662. Nonetheless, the Court will briefly address Plaintiffs' contention that framing the statute to apply only to those with a specific intent to "defraud," rather than to those with an intent to "deceive, defraud, or mislead" would have been a less restrictive way to meet the Government's interest. The Court acknowledges that limiting that statute to those with an intent to defraud would be less restrictive, but in many cases it would not prohibit the use of Caller ID spoofing for bomb threats.

612. Overbreadth analysis may be applied even to statutes that appear content-neutral, because of the danger that they will prohibit too many protected forms of expression. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104 (1972). In order to be unconstitutionally overbroad, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

Legitimate purposes for Caller ID spoofing include law enforcement purposes, domestic violence shelters using it as a means of concealment, bounty hunters and private investigators using it to track individuals, and businesses using it to display a work telephone number when an employee makes a call from a private line. Of these, due to the exceptions created in the Act, only uses by bounty hunters, private investigators, and business employees are prohibited under the Act.[10] Indeed, it seems highly unlikely that the use of call spoofing to make a business person's private line appear as the person's work number would meet the required intent to deceive, defraud, or mislead under the statute. Of all the additional legitimate personal and commercial uses of spoofing listed by the Plaintiffs, only one is actually outlawed by the Act: the use of "mystery" calling to evaluate the performance of customer service representatives.[11] The

---

[10] The Court makes this assertion under the assumption that Caller ID blocking would function sufficiently to protect the location of a domestic violence shelter.

[11] The others, namely 1) "telecommuters and distributed call center workers who do not want their number to appear in the caller ID readout"; 2) "doctors, magazine reporters, celebrities, and people who must use home phones or personal cell phones but do not want the people they call to view their personal number"; and 3) "persons trying to protect their privacy or anonymity for any number of other reasons" are persons or entities seeking anonymity, not pseudonymity. As discussed *supra*, caller ID blocking is explicitly excepted from the criminal provisions of the Act. None of services or uses required by these individuals require a number other than their own appear in the caller ID readout. To the extent that "distributed call center workers" refers to telemarketers, federal regulations already require them to transmit accurate caller identification information, so neither anonymity nor call spoofing is lawfully available to

prohibition of uses by bounty hunters, private investigators, and mystery callers under the Act represent real overbreadth, but not overbreadth substantial enough to find the Act facially unconstitutional. *See Broadrick*, 413 U.S. at 615.

**B.     Preemption**

The Plaintiffs assert that the Act is preempted by federal law for three reasons: "1) there is outright or actual conflict between federal and state law; 2) the Act will have the practical effect of regulating commerce occurring wholly outside Florida's borders; and 3) the Act violates the Interstate Commerce Clause because it imposes burdens on interstate commerce that are clearly excessive in relation to the putative local benefits." Pl. Br. at 10 (D.E. No. 39) (internal quotations omitted).

1.     <u>Conflict between Federal and State Law</u>

First, Plaintiffs assert that the Act conflicts with the Communications Act, 47 U.S.C. § 151, *et seq.*, which provides that the Federal Communications Commission ("FCC") has the authority to regulate "interstate and foreign commerce in wire and radio communication." 47 U.S.C. § 151. Preemption may occur in many contexts, including specifically when Congress expresses a clear intent to preempt state law. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977).

Plaintiffs have cited several federal FCC regulations that they claim provide for the preemption of the Act in question. An examination of federal regulations on caller ID show a federal intent to preempt state law only in certain circumstances. FCC regulations state, "We are reluctant to preempt state authority over intrastate communications, and will endeavor to

---

them. 47 C.F.R. § 64.1601(e).

accommodate state regulations whenever possible." *In re Rules and Policies Regarding Calling Number Identification Service-Caller ID*, 9 F.C.C.R. 1764 at ¶ 70. Paragraph 69 of the same regulations provides that "limited preemption of state regulations is necessary in some instances." *Id.* at ¶ 69.

More specifically, federal law preempts state laws with respect to caller ID "as follows: states may not prohibit automatic per call blocking for interstate calls, require a blocking alternative for interstate calls different from the one adopted in this proceeding, or prohibit the offering of interstate caller ID services." *Id.* The regulations provide that further preemption "may" be necessary "[t]o the extent that inconsistent regulations cannot be accommodated simultaneously for interstate and intrastate caller ID services. . . . For example, there may be cases in which state caller ID requirements applicable to intrastate calls would, as a practical matter, make it impossible for carriers to implement per call blocking for interstate calls." *Id.* at ¶ 70. In the present case, Florida has not prohibited automatic per call blocking for interstate calls. It has not required a blocking alternative for interstate calls different from the one adopted by federal regulations. It has also not prohibited the offering of interstate caller ID. More to the point, nothing is on the record showing that, as a practical matter, the Act has made it impossible for carriers to implement FCC regulations. Plaintiffs' argument that the intermingled nature of the call signaling or SS7 system used in the public switched network makes it impossible to separate caller ID data fields into interstate and intrastate components in unavailing. Despite the nature of the technology involved in caller ID technology, federal regulations clearly contemplate that only specific types of state regulations, into which the Act does not fall, will be preempted.

To the extent that the Act applies to those engaging in call spoofing over an internet-

based call ("voice over internet protocol" or "VOIP"), Plaintiffs argue that other FCC regulations preempt it. Plaintiffs' argument primarily relies on an Eighth Circuit case, *Minnesota Public Utilities Com'n. v. F.C.C.*, 483 F.3d 570 (8th Cir. 2007), which discussed the state regulation of VOIP services in another context. Plaintiffs have not pointed to any actual FCC regulations that would create a conflict in this case, where the Act exempts VOIP services used solely as an intermediary for the transmission of telephone calls. Thus, while the Eighth Circuit case does explore the difficulty in separating the intrastate and interstate components of a VOIP call, discussed *infra* below, it does not provide authority for finding any direct conflict between FCC regulations and this Act.

2.  <u>Regulation of Commerce Wholly Outside Florida's Borders</u>

It is well-established that "a state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 332 (1989). More specifically, the Commerce Clause prohibits statutes that apply "to commerce that takes place wholly outside of the State's borders," such as legislation that has the practical effect of establishing "a scale of prices for use in other states" legislation that has the effect of "forc[ing] an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another. *Id.* at 336-37. Statutes that have the practical effect of controlling conduct beyond the boundaries of the state are "invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.*

In this case, it is undisputed that it is impossible for Plaintiffs to know whether the recipient of their Caller ID spoofing is in Florida. Thus, Plaintiffs argue that it is impossible for them to conduct their Caller ID spoofing services anywhere in the country without risking

criminal liability. For example, a business located in New York might place a call, using Caller ID spoofing services, to a telephone number with an Ohio area code. Because of call forwarding and the mobility of cellular telephones, the recipient of that call might be present in Florida, and the New York business would be criminally liable for violating Fla. Stat. § 817.487 when they called the Ohio telephone number. Plaintiffs assert that the Act makes it impossible for them to conduct their businesses or use Caller ID spoofing services anywhere in the country without risk of liability under this Florida statute. Accordingly, it has the practical effect of regulating commerce wholly outside of Florida, by making it impossible for Plaintiffs to use or offer Caller ID spoofing services anywhere.

The Court notes that Defendants have not disputed Plaintiffs' assertion, buttressed by sworn statements, that it is in fact impossible for them to determine whether the recipient of a call is in Florida. The logical consequence of this impossibility is that Plaintiffs are unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute. Based upon this undisputed fact,[12] the Court concludes that the Act does, in fact, have the practical effect of regulating commerce that occurs wholly outside the state of Florida. *See Healy*, 491 U.S. at 332 . Thus, the Act violates the Commerce Clause.[13]

It is, therefore:

**ORDERED AND ADJUDGED** that

---

[12] The Court is by no means finding that a state ban on Caller ID spoofing will always violate the Commerce Clause. This Court's finding is limited to a case such as this one where it is undisputed that the Plaintiffs must tailor their actions to comply with Florida's regulations regardless of which telephone numbers they spoof.

[13] Having found that the Act violates the Commerce Clause, it is not necessary for this Court to consider Plaintiffs' other Commerce Clause-related arguments.

1. Plaintiffs' Motion for Summary Judgment **(D.E. No. 37)** is hereby **GRANTED**. Defendants' Motion for Summary Judgment **(D.E. No. 40)** is **DENIED**. A Final Judgment shall be entered separately.

2. All pending motions are DENIED AS MOOT, and this case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 16 day of July, 2009.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record